## Callie Robins *v.* The State.

1. Indictment — Venue. — It must appear from the indictment that the place where the offence was committed is within the jurisdiction of the court in which it was presented.

2. Same — Amendment. — An indictment cannot be amended as to matter of substance, — such, for instance, as the venue of the offence, — and if the venue is not alleged, a motion to quash should prevail.

3. Same. — A simple order of the court that an indictment be amended, in matter where amendment is proper, is not sufficient. The record must show affirmatively that the amendment was in fact made.

4. HOMICIDE IN SELF-DEFENCE OR DEFENCE OF ANOTHER. — When the purpose or intent of the assaulting party falls short of a reasonable indication to murder, maim, or seriously injure the assaulted party, the Code requires that the latter, or the person interfering in the latter's behalf, before killing the aggressor, must resort to all other means of prevention; but when the reasonable indication of the intent is to murder, maim, or seriously injure, the rule is the reverse, and the assaulted party may kill the assailant without having first resorted to other means to avert the danger.

5. SAME — CHARGE OF THE COURT. — The rule is properly laid down in *Kendall* v. *The State*, 8 Texas Ct. App. 569, to be, that when the evidence raises a question as to which of the two classes involves the case on trial, it necessitates instructions on both, and the legal distinctions between them should be so drawn as to avert the danger of misapplying the law of the one to the other class. And the charge on the one class should be given in connection with that on the other, to avoid confusion.

6. SAME. — NEGLIGENT HOMICIDE IN THE SECOND DEGREE, under our statute, is a homicide which occurs in the performance of an unlawful act, when the unlawful act does not rise above the grade of a misdemeanor; and when the evidence is of a character that would warrant the jury in concluding that, in the performance of the act, there was no apparent intention to kill, the law applicable to negligent homicide in the second degree should be given to the jury.

APPEAL from the District Court of Smith. Tried below before the Hon. H. G. ROBERTSON, Special Judge.

The indictment charged the appellant with the murder, upon implied malice, of Hope Millenium, in Smith County, on the seventh day of September, 1880. She was found guilty of manslaughter, and her punishment assessed at two years in the penitentiary. The appellant and the deceased were negroes, as were also the witnesses to the facts. The opinion discloses the material facts in the case.

No brief for the appellant.

*Thomas Ball*, Assistant Attorney-General, for the State.

WHITE, P. J. An indictment "must show that the place where the offence was committed is within the jurisdiction of the court in which the indictment is presented." Code Cr. Proc., art. 420, subd. 5.

The case of *Collins* v. *The State*, 6 Texas Ct. App. 647, is directly in point upon the question raised by the motion to quash the indictment in this case, and the right of the court to permit the district attorney to amend by inserting the name of the county, where the same was matter of substance and essential to the allegation of venue, and it was there held that the court should have quashed the indictment, and erred in permitting the amendment. In Collins' case the authorities are all collated, and it is deemed unnecessary to do more than refer to that case upon these points.

The indictment here was fatally defective in that it did not aver the venue of the offence, and this could not be amended, as was attempted to be done. But if it had been a matter amendable, then the defect never was in fact amended, though the court granted the motion to do so. Simply to order an indictment amended is not sufficient; the record must show affirmatively that the amendment was n fact made. *Cox* v. *The State*, 7 Texas Ct. App. 495; *Turner* v. *The State*, 7 Texas Ct. App. 596.

The fact that the indictment is fatally defective necessarily disposes of the appeal. There are, however, several questions presented in the record which should be noticed, inasmuch as another indictment in all likelihood will be preferred against the defendant. Most of these questions have reference to the sufficiency of the charge of the court to the jury. Upon murder in the second degree and manslaughter, the charge was an able enunciation of the law. In order to illustrate the objections to the charge, so far as it related to self-defence and the defence of the person of another, we will briefly state the substance of the material facts in evidence.

This defendant, who was about sixteen years of age, and her sister Mary, who was about fourteen years of age, had a difficulty on the evening of September 6th, in Mr. Killingsworth's field, with the deceased, who was a man about forty-five years of age, though lame and somewhat decrepit.

No personal violence was attempted, as it appears, by either of the parties on that occasion. But deceased forbid the girls from coming to the spring for water, and indulged in threats—amongst others, that he would kill them if they came below the cross-fence. After dusk the girls were sent by their mother to go to the spring, to feed the hogs and get water. In going to the spring they would have to pass near the house of deceased. No one saw the second difficulty between the parties, which resulted so fatally, but the different statements of the circumstances of the occurrence made to different parties by deceased were admitted in evidence, after a proper predicate had been laid for the introduction of dying declarations. It is needless to say that these statements are contradictory, as deposed to by the witnesses for the State and those for defendant. For the purposes of this opinion we will take the testimony of Thomas Robins, the step-father of defendant. He says: "On the following morning I went down to see deceased; found him sitting on the side of his bed. I asked him why he had been bothering the girls; that I had told him to let them alone, especially when I was not at home. Hope (deceased) replied, 'Well, brother Tom, the truth is the truth, and the truth of this matter is, that me and the girls had a little difficulty yesterday in the field, and they were wrong in that, and it made me mad, and when they came down here last night I got a pole and started towards Mary Robins, and Callie caught me and threw me down across the pole I had, and hurt me.' Deceased walked to the door and pointed out a pole as being the one that he had. It was nearly ten feet long." To George Bass, another witness, deceased said: " Callie and Mary Robins came down there, and he went out and started towards Mary with a sugarcane stalk in his hand, and that Callie seized him, threw him down, slapped his jaws, and held him while Mary beat him across his belly with a white-oak stick."

On the question of self-defence the court charged the

jury nearly in the language of the statute : that " homicide is justifiable in the protection of the person against any unlawful and violent attack, and in such case all other means must be resorted to for the prevention of the injury, and the killing must take place while the person killed is in the very act of making such unlawful and violent attack," etc. Now, this charge might have been sufficient if the evidence was that the deceased was about attacking Mary Robins with a stalk of sugar-cane, with which death or serious injury could not likely have been produced. But it was not the law applicable to another phase of the facts, in case the jury should have believed that the assault upon Mary was with intent to kill or seriously injure, with a pole ten feet long, and a deadly weapon. In such case the law is that, " when a purpose or intent to murder, maim, or seriously injure is reasonably indicated by the attack, the law, in view of the exigency of the assaulted party, authorizes him, or any one who interposes in his behalf, to take the assailant's life without first resorting to other means to avert the danger." *Kendall* v. *The State*, 8 Texas Ct. App. 569. We are of opinion, in consideration of the facts stated, that the court should also have given this alternative view of the law in connection with and in juxtaposition to the law as given, in order that the jury might have had a rule to guide and govern them in both aspects of the facts as we have above pointed them out. In a subsequent portion of the charge, it is true, the court does present the rule of the law as enunciated in Kendall's case, but not as pertinently, in our opinion, as it would have been if charged in connection with, and as the appropriate alternative of the charge quoted as given.

Again : we are of opinion the court erred in refusing to give, as requested for defendant, a charge upon negligent homicide in the second degree. The evidence in the case might have warranted the jury, for aught that appears, in concluding that there was no apparent intention to kill. Penal Code, art. 584.

Negligent homicide in the second degree, under our statute, is where the homicide is committed in the prosecution of an unlawful act, and where the unlawful act does not rise above the grade of a misdemeanor. Penal Code, arts. 584, 587, 589. If the girls (the defendants) did not intend to kill, but intended to beat the deceased with a stick, a weapon not necessarily deadly, but calculated to inflict, and which did inflict, serious bodily injury, it was a question for the jury to determine the intent; and if they could find that it was not with the purpose to take the life of the deceased, then it would have been their duty to have found, under an appropriate instruction, no higher grade of offence than negligent homicide.

Because the indictment is fatally defective, and because of error in the charge of the court, the judgment of the District Court is reversed and the cause remanded.

*Reversed and remanded.*